# EXHIBIT "A"

CASE  17-C-599

KANAWHA

PAGE  1

WV STATE UNIVERSITY BOARD OF G vs. DOW CHEMICAL COMPANY

LINE  DATE   ACTION

```
 1 04/27/17  # CASE INFO SHEET; COMPLAINT; F FEE; RCPT 550441; $200.00
 2 06/06/17  @ 1ST AMD C: ISSUED SUM & 9 CPY
 3 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
 4          # BAYER CORP.
 5 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
 6          # RHONE-POULENC AG COMPANY
 7 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
 8          # UNION CARBIDE CORP.
 9 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
10          # DOW CHEMICAL COMPANY
11 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
12          # RHONE-POULENC AG COMPANY INC
13 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
14          # AVENTIS CROPSCIENCE USA, LP
15 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
16          # RHONE-POULEN AG INC
17 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
18          # BAYER CROPSCIENCE HOLDING INC
19 06/12/17  # LET FR SS DTD 6/8/17; SUM W/RET ON AMD C (6/8/17 SS) AS TO
20          # BAYER CROPSCIENCE, LP
21 06/28/17  # (8) E-CERTS FR SS
```

A TRUE COPY

TESTE: *Cathy S. Gatson* CLERK
CIRCUIT COURT KANAWHA COUNTY, W.VA.

By *Clugh*
7/5/17

EXHIBIT

A

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2017 APR 27 PM 3: 00

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**WEST VIRGINIA STATE**
**UNIVERSITY BOARD OF GOVERNORS**
**for and on behalf of West Virginia State**
**University,**

       **Plaintiff,**

**v.**

Civil Action No. 17-C-599
Judge King

**THE DOW CHEMICAL COMPANY;**
**UNION CARBIDE CORPORATION;**
**BAYER CORPORATION;**
**BAYER CROPSCIENCE LP;**
**RHONE-POULENC INC.;**
**RHONE-POULENC AG COMPANY;**
**AVENTIS CROPSCIENCE USA LP;**
**AVENTIS ENVIRONMENTAL SCIENCE USA LP; and**
**SANOFI-AVENTIS U.S. LLC,**

       **Defendants.**

## COMPLAINT

### Nature of the Action

1.    Dow Chemical's Institute Plant has contaminated the groundwater under West Virginia State University with three likely carcinogens, yet Dow refuses to clean up the pollution and pay for the harm it has caused the University. Instead, Dow—a global chemical giant with $48 billion in annual revenue—seeks to force the costs of its pollution upon a small institution whose modest resources are already fully consumed by serving its students and its community. The law has no place for such greed and injustice. The University brings this action to compel Dow and others who operated the plant to clean up their mess and pay for the damage they have done.

## PARTIES

2.     Plaintiff West Virginia State University (the "University") is a historically black university located in Institute, West Virginia.[1] It began in 1890 as the West Virginia Colored Institute, one of 19 land-grant institutions that Congress authorized that year to educate African Americans in agriculture and the mechanical arts. The region has depended on it ever since, and it has graduated a long line of distinguished alumni who have made their mark in West Virginia, around the country, and around the world. In all, the University has produced more than 31,000 graduates. It is an agency of the state of West Virginia and an institute of higher education under the authority of the West Virginia State University Board of Governors as prescribed by W.Va. Code 18B-2A-1(b).

3.     Defendant The Dow Chemical Company ("Dow") is a Delaware corporation with principal offices in Midland, Michigan, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

4.     Defendant Union Carbide Corporation ("Union Carbide") is a Texas corporation with principal offices in Seadrift, Texas, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

5.     Defendant Bayer Corporation is an Indiana corporation with principal offices in Pittsburgh, Pennsylvania, which at relevant times owned the site and facility in question and engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

6.     Defendant Bayer CropScience LP is a Delaware limited partnership with principal offices in Research Triangle Park, North Carolina, which at relevant times owned the site and facility in question and engaged in chemical manufacturing and operations in Kanawha County, West Virginia. Bayer CropScience LP is the corporation formerly known as defendant Aventis

---

[1] All references to West Virginia State University also refer to its Board of Governors.

CropScience USA LP, and is the successor in interest liable for the acts and omissions of Aventis CropScience USA LP as described herein.

7. Defendant Rhone-Poulenc Inc., is a New York corporation with principal offices in Princeton, New Jersey, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

8. Defendant Rhone-Poulenc AG Company is a New York corporation with principal offices in Research Triangle Park, North Carolina. Rhone-Poulenc AG Company is the successor company to Rhone-Poulenc Inc., and is liable for its acts and omissions as described herein.

9. Defendant Aventis Environmental Science USA LP is a Delaware limited partnership with principal offices in Wilmington, Delaware, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

10. Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company with principal offices in Bridgewater, New Jersey, which is the successor company to Aventis Environmental Science USA LP and which is liable for the acts and omissions of Aventis Environmental Science USA LP as described herein.

## JURISDICTION AND VENUE

11. Plaintiff West Virginia State University is situated in and conducts its business of higher education in Institute, West Virginia, within Kanawha County.

12. Each of the above-named defendants conducts or at relevant times conducted business in Institute, West Virginia, within Kanawha County.

13.     Jurisdiction and venue are proper in this court because the harm complained of herein affected property in Kanawha County, West Virginia, and the amount in controversy exceeds $2,500.00.

## STATEMENT OF FACTS

14.     In or about 1947, Union Carbide began manufacturing chemicals at the Institute, West Virginia chemical plant where Dow now has operations (the "Institute Plant"). The Institute Plant was located less than a quarter-mile from the University's campus, with the West Virginia Rehabilitation Center lying between them.

15.     In or about 1986, Union Carbide sold the plant to Rhone-Poulenc Inc., the U.S. arm of a French chemical company. Rhone-Poulenc operated the plant until in or about 2000.

16.     In or about 2000, Rhone-Poulenc merged with another company to form Aventis. Aventis operated the plant until in or about 2002, when the plant became part of Bayer CropScience. Bayer CropScience then operated the plant for many years.

17.     In or about 2014, the University acquired the former West Virginia Rehabilitation Center ("Rehabilitation Center"), extending the University's property so that it was immediately adjacent to the Institute Plant.

18.     In or about 2015, Bayer CropScience announced that it was returning control of the plant to Union Carbide, which by then was a subsidiary of Dow Chemical. Dow's Union Carbide subsidiary now operates the Institute Plant.

19.     Each of the Defendants discussed in paragraphs 14 through 18 was an operator of the Institute Plant at times relevant to this action, and each of them produced at the Institute Plant chemicals known to be dangerous to human health (hereinafter "dangerous chemicals").

4

20.     Acts and omissions by the Defendants have directly and proximately caused the following dangerous chemicals to enter the groundwater under the University's property: 1,4 dioxane; 1,2 dichloroethane; and chloroform (the "Institute Plant Contaminants"). These acts and omissions include but are not limited to the Defendants' failure to take measures adequate to prevent the Institute Plant Contaminants' escape into the ground and water, and their migration to University property.

21.     Dow has acknowledged to the United States Environmental Protection Agency ("EPA") that the Institute Plant is the source of the Institute Plant Contaminants.

22.     Each of the Institute Plant Contaminants is a chemical that can cause harm to human health and is classified by the EPA as a likely human carcinogen. Each of the Institute Plant Contaminants, in addition to being a likely carcinogen, is known to harm human health in other ways.

23.     As a direct and proximate result of the Defendants' acts and omissions, the Institute Plant Contaminants now exist in the University's groundwater at elevated levels.

24.     The Institute Plant Contaminants are volatile and semivolatile organic compounds that can migrate upward through soil and vaporize into the air above ground, including within buildings.

25.     Upon information and belief, the Institute Plant Contaminants have continuously migrated from the Institute Plant to the University's property for many years. They continue to do so today and will continue to do so for the foreseeable future absent preventive measures. And absent remedial measures, the Institute Plant Contaminants will remain in the University's groundwater and soil for decades.

26.     For the University to be restored to the position it would have been in had Defendants not polluted its property, measures including but not limited to the following are required:

      a.     Physical underground separation of the University's property from the Institute Plant;

      b.     Removal of the Institute Plant Contaminants from the University's property;

      c.     Protective measures to prevent the Institute Plant Contaminants from affecting the air in existing and future University buildings;

      d.     Protective measures to prevent the Institute Plant Contaminants from affecting activities on University property that involve disturbing the soil; and

      e.     Measures to counteract the damage that the pollution will cause to the University's reputation and business.

27.     Notwithstanding the measures described in paragraph 26, the University will be required to restrict its use of the Rehabilitation Center property, which was the only property available for substantial University expansion, and also must forgo conducting agricultural activities on campus.

28.     Also notwithstanding the measures described in paragraph 26, the University has suffered and will continue to suffer damages including but not limited to loss of the following: property value; usable groundwater; enrollment; reputation; business expectancy; goodwill; and income that the University would have received absent the Institute Plant's pollution of its property.

29.     The University has spent money and its officials have spent time investigating and responding to the Institute Plant pollution. Investigating and responding to the Institute Plant pollution have also created a distraction, diminishing the University's ability to carry out its missions of educating students and serving the community and region, as well as causing frustration, annoyance, and inconvenience.

30.     All the damages described in the preceding paragraphs were directly and proximately caused by Defendants' acts and omissions.

31.     Defendant Dow knows the extent of the Institute Plant's pollution of the University's property, yet has failed to perform any removal or remediation of the pollution.

32.     Defendants caused the pollution of the University's property through no fault of the University and without the University's consent.

## CLAIMS FOR RELIEF[2]

## COUNT I: DECLARATORY JUDGMENT

33.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

34.     An actual and legal controversy exists such that the University is entitled to a judicial declaration of its rights and legal relationship with Defendants.

35.     WHEREFORE, the University respectfully requests that this Court enter a declaratory judgment in its favor and against Defendants, jointly and severally, pursuant to the

---

[2] In addition to the claims for relief made herein, the University will transmit forthwith via United States Mail to the Defendants and the West Virginia Department of Environmental Protection pre-suit notice letters as required by statute and regulation which provide notice to Defendants that the University intends to seek leave of this Honorable Court after the requisite 60-day pre-suit notice has lapsed to amend this Complaint to include a regulatory cause of action asserted under the Citizen Suit provision of the West Virginia Hazardous Waste Management Act, W.Va. Code section 22-18-1 et seq.

West Virginia Uniform Declaratory Judgment Act, W.Va. Code section 55-13-1 et seq., as follows:

        a.     Declaring that Defendants are jointly and severally liable to the University, and must pay all necessary expenses and costs incurred in the removal, remediation and restoration of the University's property to its pre-existing condition; including but not limited to investigation and evaluation costs, testing and monitoring costs, costs associated with the University's participation in studies and meetings relating to monitoring and assessing the plumes of the dangerous chemicals stemming from Defendants' contamination; the cost of treatment options and all other response costs necessary to restore the University's property to the condition it would have been in absent Defendants' contamination, a condition meeting or exceeding residential use standards;

        b.     Declaring that Defendants must fully indemnify the University against all claims by third parties arising as a result of the Institute Plant Contaminants, to include bearing all legal fees, costs, and expenses associated with such claims;

        c.     Ordering that Defendants must cease and desist from operating their facility unless and until they can operate it in a responsible and prudent manner that prevents further contamination of the University's property;

        d.     Ordering Defendants, at their expense, to implement effective plans to remove and remediate the contamination and fully restore the University's property to the condition it would have been in absent the contamination;

        e.     Ordering Defendants to conduct periodic post-remediation studies and monitoring to assure the effectiveness of the remedial measures.

8

f.       Maintaining jurisdiction over this matter to ensure that remediation and restoration efforts are performed according to such plans, and are timely and properly executed;

g.       Ordering compensatory and remedial relief, as follows: An award of damages which will fully and fairly compensate the University for its losses, including but not limited to (1) any reasonable cost incurred to date for environmental investigation; (2) the cost of any future environmental investigation that the University can reasonably expect to incur; (3) all costs which are reasonably necessary to restore the University's property to the condition it would have been in absent the Defendant's contamination; and (4) compensation for the loss of the enjoyment of the University's property, both past and future; (5) compensation for the diminution in value of the University's groundwater; (6) compensation for the loss of business interest, enterprise and enrollment, and all income generated therefrom, as well as damage to reputation and brand and loss of goodwill, both past and future, occasioned by Defendants' acts and omissions; (7) aggravation, annoyance, and inconvenience, past and future; (8) past and future loss of the value of the University's real property and rights incidental thereto; and (9) consequential damages.

h.       Awarding punitive damages;

i.       Awarding the costs and expenses of this action, including attorney's fees and expert fees;

j.       Awarding pre-judgment and post-judgment interests;

k.       Awarding the University such other damages as the Court deems appropriate.

## COUNT II: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

36.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

37.     The Defendants continue to operate their businesses and maintain the Institute Plant in a manner which releases the Institute Plant Contaminants into the environment and the University's property.

38.     Defendants' ongoing pollution of the University's property is causing the University irreparable harm, including but not limited to contamination of the University's property that cannot be fully removed and damage to the University's reputation and business that cannot be fully repaired.

39.     Remedies at law and monetary damages are inadequate to fully compensate the University for these injuries.

40.     Defendants will not be harmed by the issuance of an injunction.

41.     The University's likelihood of success on the merits in this action weighs in favor of issuing an injunction.

42.     Balancing the hardships between the University's injury and the hardship upon Defendant in immediately remediating the contamination and restoring the University's property, a remedy in equity is warranted.

43.     The public interest would be well served by enjoining further contamination by Defendants and ordering them to immediately remediate and restore the University's property to the condition it would have been in absent the contamination.

44.     Wherefore, the University prays that the Court issue preliminary and permanent injunctions ordering Defendants to:

10

a.      Remove the Institute Plant Contaminants from the University's property;

b.      Install barriers to protect University facilities, including but not limited to buildings and athletic fields, from possible intrusions of the Institute Plant Contaminants;

c.      Install air filtration systems in all University buildings sufficient to ensure that, in the event the Institute Plant Contaminants enter the air in any building, they are removed;

d.      Monitor the Institute Plant Contaminants on the University's property to ensure that no person is exposed to the Institute Plant Contaminants;

e.      Implement a national public relations program funded at a level sufficient to completely counteract the damage that the Institute Plant Contaminants will do to the University's reputation and business;

f.      Take all other steps necessary to eliminate any effects of the Institute Plant Contaminants on the University; its students, faculty, and staff; and other persons present on the University's property; and to restore the University and its property to the condition it would have been in absent the Institute Plant Contaminants;

g.      Bear all costs and losses that the University incurs as a result of the Institute Plant's pollution of the University's property.

45.     The University further prays that the Court regularly monitor Defendants' compliance with its Order granting this relief.

## COUNT III: NEGLIGENCE

46.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

11

47. Defendants owed the University a duty to conduct their business, operations and/or storage of dangerous chemicals with at least reasonable care so as not to jeopardize the University property and interests, both past and future.

48. Defendants breached their duty of care by negligently handling dangerous chemicals, resulting in the release of the Institute Plant Contaminants into the ground and groundwater at the Institute Plant and the University.

49. As a direct and proximate result of Defendants' negligence, these dangerous chemicals migrated onto and contaminated the University's property and the water beneath it.

50. Defendants further breached their duty of care by failing to properly respond to, rectify and remove the contamination described herein; by failing to warn the University of their acts and omissions above; and by failing to clean up the Institute Plant Contaminants that migrated and will continue to migrate onto the property of the University in the future, resulting in contamination.

51. But for Defendants' acts and omissions, the contamination would not have occurred and the University would not have been harmed.

52. Defendants knew and should have known that their conduct was in violation of environmental laws, and knew and should have known that it would proximately cause harm and damage to the University.

53. As a direct and proximate result of Defendants' negligent acts and omissions, the University has suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief set forth below.

## COUNT IV: INTERFERENCE WITH BUSINESS EXPECTANCY
## AND LOSS OF GOODWILL

54.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

55.     At all times relevant to this litigation, the University had a business reputation and an expectancy of a continuing business enterprise.

56.     Such business expectancy included present and future customer goodwill, as well as the University's reputation and brand of excellence in all aspects of the higher education experience.

57.     The University had an expectation of a future customer base and income due to factors attributable to its business and reputation.

58.     The acts and omissions of Defendants in contaminating the University's property directly interfered with the University's business expectancy and irreparably damaged its enterprise goodwill, both now and in the future, by, among other things, damaging the University's reputation; causing an anticipated reduction in enrollment and financial support of the University; and by causing alarm, stigma and uncertainty among students, patrons, staff and others as to whether the condition of the University's property posed a health risk.

59.     As a direct and proximate result of Defendants' interference with business expectancy and the resulting loss of the University's goodwill, the University has suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief set forth below.

## COUNT V: PUBLIC NUISANCE

60.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

13

61. As a state agency, the University is engaged in business and services that benefit the general public, both in the form of higher education as well as various other enriching activities.

62. The University conducts its business, services, and activities upon public ground that it owns as an agency of the State of West Virginia.

63. At all relevant times, Defendants had a duty to operate their business and maintain their site without violating the University's proprietary interest in conducting its business and activities upon its property, including the right to the use and enjoyment of its property, and specifically the attraction of students for enrollment and others to the University.

64. Defendants failed to prevent and remedy the contamination of the environment, thus substantially and unreasonably interfering with the University's property and the public's rights to enjoy such property, as well as the services, enriching activities, and benefits of the University.

65. The University as the property owner and service provider has suffered special harm because the contamination unreasonably interferes with and disturbs the University's business and business expectancy, unreasonably interferes with the University's comfortable use and enjoyment of property, and unlawfully interferes with and prevents the public's enjoyment of the business, services, and benefits of the University.

66. Further, the University as the property owner has suffered special harm because it has incurred response costs to investigate and respond to the contamination impacting its property and business invitees on its property, including staff and students.

67. This nuisance and the resultant damages to the University were foreseeable to Defendants.

14

68.      Such substantial and unreasonable interference and adverse effect on the use, enjoyment, and value of the University's property is ongoing and continuous, and will cause future damage.

69.      Unless the nuisance is abated, the University's business and enrollment will suffer, and its interests will be further jeopardized.

70.      As a direct and proximate result of Defendants' unreasonable and unwarranted and unlawful creation and maintenance of a continuing public nuisance, the University has suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief below.

## COUNT VI: PRIVATE NUISANCE

71.      The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

72.      The University has ownership and proprietary interests in the real and personal property which was contaminated by dangerous chemicals migrating from Defendants' property.

73.      As stated herein, these dangerous chemicals migrated onto the University's property as a direct and proximate result of Defendants' acts and omissions and breaches of duties of care.

74.      Defendants knew that the invasion of said dangerous chemicals into and onto the University's property was substantially certain to result from their actions and omissions, as aforesaid.

75.      The University has the right to exclusive use and quiet enjoyment of its property.

76.      The conduct of Defendants constitutes a private nuisance in that such conduct has caused property damage as well as substantial injury and caused an unwarranted and

15

unreasonable interference with the comfortable enjoyment and use by the University of its property and its right to use and develop its property in the customary manner without exposure to or concern regarding the dangers of dangerous chemicals.

77. This nuisance and the resultant damages to the University were foreseeable to Defendants.

78. Such substantial and unreasonable interference and adverse effect on the use, enjoyment, and value of the University property is ongoing and continuous, and will cause future damage.

79. Unless the nuisance is abated, its business and enrollment will suffer, and its interests will be further jeopardized.

80. As a direct and proximate result, the University has suffered and will continue to suffer the damages described in this Complaint and is entitled to the remedies sought in the Prayer for Relief below.

### COUNT VII: TRESPASS

81. The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

82. At all relevant times, the University owned and/or lawfully possessed property within the area affected by the contamination.

83. The Defendants' acts and omissions caused dangerous chemicals to physically enter onto the property of the University and to contaminate it, without consent or acquiescence of the University.

84. The migration and presence of dangerous chemicals from Defendants' site constitutes a trespass upon the University's property.

16

85.     The intentional and willful conduct of Defendants which resulted in said unlawful trespass substantially and unreasonably interfered with the University's exclusive possession of its property and its interest in the normal operations of its business, services, and activities.

86.     This interference and the resultant damages to the University were foreseeable to Defendants.

87.     This unlawful trespass by Defendants proximately caused substantial damage to the University in its exclusive possession of its property and unreasonably interfered with its conduct of business, services and activities; its enrollment; and other interests, both past and future and has caused the University a diminution in property value, as set forth more fully herein.

88.     As a direct and proximate result of Defendants' trespass, the University has suffered and will continue to suffer the damages described in this Complaint and is entitled to the remedies sought in the Prayer for Relief below.

### COUNT VIII: STRICT LIABILITY

89.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

90.     Defendants' conduct in the production, storage, control, disposal, release, and/or use of dangerous chemicals in its operations at the Institute Facility constituted an abnormally dangerous activity, necessitating a heightened duty of care to prevent injury to others.

91.     The activities of the Defendants have resulted in the intentional, incidental, or accidental generation of dangerous chemicals on their property, and the migration of dangerous chemicals onto the University's property, which has (a) created a high degree of risk of harm to others, and particularly persons residing, visiting, working upon, or attending school and related

17

activities upon the University's property; as well as to the property and chattels of the University; (b) created a risk involving a likelihood that the harm would be great; (c) created a risk of harm that could not be eliminated by the exercise of reasonable care; (d) were and are not activities or matters of common usage; and (e) were and are inappropriate to the place that they were and are being carried on, in that they constituted and constitute a non-natural use of the Defendants' property and the University's property, which imposed an unusual and extraordinary risk of harm to the University's property.

92.     The value of Defendants' activities to the community are outweighed by their dangerous attributes.

93.     As a direct and proximate result of the conduct of Defendants in engaging in the abnormally dangerous activities alleged above, dangerous chemicals have harmed and are contaminating the University's property, and those upon the University's property have been exposed to such dangerous chemicals. The harm sustained by the University is exactly the kind of harm which made Defendants' activities abnormally dangerous.

94.     The University did not contribute to its harm.

95.     Defendants are strictly liable to the University for all damages to the University, past and future, which are the natural consequence of Defendants' abnormally dangerous activities.

96.     As a direct and proximate result of Defendants' acts and omissions, the University has suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief below.

18

## COUNT IX: UNJUST ENRICHMENT

97.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

98.     Defendants have been greatly enriched by their acts and omissions, including, but not limited to, their failure to properly control the dangerous chemicals released from their property, sites, and/or operations; and by their failure to remove and dispose of the dangerous chemicals which contaminate the property of the University.

99.     Defendants are using the University's property as their own private dumping or disposal facility without compensation or lawful right to do so.

100.    Defendants are aware that the contamination occurred, and yet have benefited and continue to benefit from their wrongful conduct by failing to reasonably abate, remove and remedy this contamination and by failing to cover the costs of such correction and cure.

101.    Defendants lack any legal justification for allowing the hazardous and toxic chemicals to remain on the property of the University.

102.    The University did not consent to the use of its property in this manner.

103.    Defendants' unauthorized use of the University's property has benefitted them monetarily to the University's detriment.  Defendants are therefore unjustly enriched, and the University is entitled, in equity, to past and future damages as a result of Defendants' unjust enrichment.

104.    Under the circumstances described herein, it would be inequitable for Defendants to retain the benefits of their acts and omissions without paying the value thereof to the University, for past and future damages.

19

105.    As a direct and proximate result of Defendants' acts and omissions, the University has suffered and will continue to suffer future damages in the form of loss of business and business expectancy; damage to reputation and loss of goodwill; diminution in property value; cost of cleanup; cost of remediation; aggravation, annoyance and inconvenience; and seeks damages named in the Prayer for Relief at the conclusion of this Complaint.

## COUNT X:  PUNITIVE DAMAGES

106.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

107.    The Defendants' acts and omissions as described in Counts I through IX above were conducted with intentional, malicious, wanton, willful and reckless indifference to the health and safety of the University's students, faculty, staff, and others on campus, the University's rights, and with flagrant disregard for the safety and property of the University. Accordingly, Defendants are liable for punitive damages.

## PRAYER FOR RELIEF

108.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

109.    WHEREFORE, the University demands that it be awarded damages together with equitable relief as follows:

a.    A judgment against Defendants finding that they are jointly and severally liable to the University;

b.    Compensatory and remedial damages that will fully and fairly compensate the University for its past and future losses, including but not limited to:

      i.    any reasonable cost incurred to date for environmental investigation;

      ii.    the cost of any future environmental investigation and health assessment that the University can reasonably expect to incur;

      iii.    all costs which are reasonably necessary to restore the University properties to the condition it would have been in absent the Defendant's contamination;

      iv.    compensation for the loss of the enjoyment of the University's property, both past and future;

      v.    compensation for the diminution in value of the University's groundwater;

      vi.    compensation for the loss of business interest, enterprise and enrollment, and all income generated therefrom, as well as damage to reputation and brand and loss of goodwill, both past and future, occasioned by Defendants' acts and omissions;

      vii.    aggravation, annoyance, and inconvenience, past and future;

      viii.    past and future loss and diminution of the value of the University's real property and rights incidental thereto; and

      ix.    consequential damages;

c.  Punitive damages in an amount determined by a jury;

d.  The costs and expenses of this action, including attorney's fees and expert fees;

e.  Prejudgment and postjudgment interests;

f.  The cost of any expenses, fees, or liability incurred by the University as a result of claims by third parties that arise from the Institute Plant Contaminants;

g.  All other further and general relief, whether compensatory, punitive, or equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

> **WEST VIRGINIA STATE**
> **UNIVERSITY BOARD OF GOVERNORS**
> **for and on behalf of West Virginia State**
> **University,**
>
> By Counsel.

Brian A. Glasser (WVSB #6597)
Samuel A. Hrko (WVSB #7727)
Steven R. Ruby (WVSB #10752)
Sharon F. Iskra (WVSB #6582)
Bailey & Glasser LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA **FILED**

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

      Plaintiff,

v.

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP;

      Defendants.

2017 JUN -6 P 3: 59

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

Civil Action No. 17-C-599
Judge King

### FIRST AMENDED COMPLAINT

#### Nature of the Action

1.    Dow Chemical's Institute Plant has contaminated the groundwater under West Virginia State University with three likely carcinogens, yet Dow refuses to clean up the pollution and pay for the harm it has caused the University. Instead, Dow—a global chemical giant with $48 billion in annual revenue—seeks to force the costs of its pollution upon a small institution whose modest resources are already fully consumed by serving its students and its community. The law has no place for such greed and injustice. The University brings this action to compel Dow and others who operated the plant to clean up their mess and pay for the damage they have done.

## PARTIES

2.    Plaintiff West Virginia State University (the "University") is a historically black university located in Institute, West Virginia.[1] It began in 1890 as the West Virginia Colored Institute, one of 19 land-grant institutions that Congress authorized that year to educate African Americans in agriculture and the mechanical arts. The region has depended on it ever since, and it has graduated a long line of distinguished alumni who have made their mark in West Virginia, around the country, and around the world. In all, the University has produced more than 31,000 graduates. It is an agency of the state of West Virginia and an institute of higher education under the authority of the West Virginia State University Board of Governors as prescribed by W.Va. Code § 18B-2A-1(b).

3.    Defendant The Dow Chemical Company ("Dow") is a Delaware corporation with principal offices in Bay City, Michigan, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

4.    Defendant Union Carbide Corporation ("Union Carbide") is a New York corporation with principal offices in Seadrift, Texas, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

5.    Defendant Bayer Corporation is an Indiana corporation with principal offices in Pittsburgh, Pennsylvania, which at relevant times owned the site and facility in question and engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

6.    Defendant Bayer CropScience LP is a Delaware limited partnership with principal offices in Research Triangle Park, North Carolina, which at relevant times owned the site and facility in question and engaged in chemical manufacturing and operations in Kanawha County, West Virginia. Bayer CropScience LP is the corporation formerly known as defendant Aventis

---

[1] All references to West Virginia State University also refer to its Board of Governors.

2

CropScience USA LP, and is the successor in interest liable for the acts and omissions of Aventis CropScience USA LP as described herein.

7.　Defendant Bayer Cropscience Holding Inc. is an officer and general partner of Bayer Cropscience LP and upon information and belief may be liable for the acts and omissions of Bayer Cropscience LP.

8.　Defendant Rhone-Poulenc Inc., is a New York corporation with principal offices in Princeton, New Jersey, which at relevant times engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

9.　Defendant Rhone-Poulenc AG Company is a New York corporation with principal offices in Research Triangle Park, North Carolina. Rhone-Poulenc AG Company is the successor company to Rhone-Poulenc Inc., and is liable for its acts and omissions as described herein.

10.　Defendant Rhone-Poulenc AG Company Inc. is a New York corporation with principal offices in Research Triangle Park, North Carolina. Rhone-Poulenc AG Company Inc. is a successor to Rhone-Poulenc Inc. and is liable for its acts and omissions as described herein.

11.　Defendant Aventis Cropcience USA LP is a predecessor to Bayer Cropscience LP, which at relevant times owned and operated the site and facility in question and engaged in chemical manufacturing and operations in Kanawha County, West Virginia.

### JURISDICTION AND VENUE

12.　Plaintiff West Virginia State University is situated in and conducts its business of higher education in Institute, West Virginia, within Kanawha County.

13.　Each of the above-named defendants conducts or at relevant times conducted business in Institute, West Virginia, within Kanawha County.

3

14.     Jurisdiction and venue are proper in this court because the harm complained of herein affected property in Kanawha County, West Virginia, and the amount in controversy exceeds $2,500.00.

## STATEMENT OF FACTS

15.     In or about 1947, Union Carbide began manufacturing chemicals at the Institute, West Virginia chemical plant where Dow now has operations (the "Institute Plant"). The Institute Plant was located less than a quarter-mile from the University's campus, with the West Virginia Rehabilitation Center lying between them.

16.     In or about 1986, Union Carbide sold the plant to Rhone-Poulenc Inc., the U.S. arm of a French chemical company. Rhone-Poulenc operated the plant until in or about 2000.

17.     In or about 2000, Rhone-Poulenc merged with another company to form Aventis. Aventis operated the plant until in or about 2002, when the plant became part of Bayer CropScience. Bayer CropScience then operated the plant for many years.

18.     In or about 2013, the University acquired the former West Virginia Rehabilitation Center ("Rehabilitation Center"), extending the University's property so that it was immediately adjacent to the Institute Plant.

19.     In or about 2015, Bayer CropScience announced that it was returning control of the plant to Union Carbide, which by then was a subsidiary of Dow Chemical. Dow's Union Carbide subsidiary now operates the Institute Plant.

20.     Each of the Defendants discussed in paragraphs 15 through 19 was an operator of the Institute Plant at times relevant to this action, and each of them produced and handled at the Institute Plant chemicals known to be dangerous to human health (hereinafter "dangerous chemicals").

4

21.     Acts and omissions by the Defendants have directly and proximately caused the following dangerous chemicals to enter the groundwater under the University's property: 1,4 dioxane; 1,1 dichloroethane; and chloroform (the "Institute Plant Contaminants"). These acts and omissions include but are not limited to the Defendants' failure to take measures adequate to prevent the Institute Plant Contaminants' escape into the ground and water, resulting in the migration of said chemicals to University property.

22.     Dow has acknowledged to the United States Environmental Protection Agency ("EPA") that the Institute Plant is the source of the Institute Plant Contaminants.

23.     Each of the Institute Plant Contaminants is a chemical that can cause harm to human health and is classified by the EPA as a likely human carcinogen. Each of the Institute Plant Contaminants, in addition to being a likely carcinogen, is known to harm human health in other ways.

24.     As a direct and proximate result of the Defendants' acts and omissions, the Institute Plant Contaminants now exist in the University's groundwater at elevated levels.

25.     The Institute Plant Contaminants are volatile and semivolatile organic compounds that can migrate upward through soil and vaporize into the air above ground, including the air within buildings.

26.     Upon information and belief, the Institute Plant Contaminants have continuously migrated from the Institute Plant to the University's property for many years. They continue to do so today and will continue to do so for the foreseeable future, absent preventive measures. And absent remedial measures, the Institute Plant Contaminants will remain in the University's groundwater and soil for decades.

5

27.     To restore the University to the position it would have been in had Defendants not polluted its property, measures including but not limited to the following are required:

    a.    Physical underground separation of the University's property from the Institute Plant;

    b.    Removal of the Institute Plant Contaminants from the University's property;

    c.    Protective measures to prevent the Institute Plant Contaminants from affecting the indoor environment in existing and future University buildings;

    d.    Protective measures to prevent the Institute Plant Contaminants from affecting activities on University property that involve disturbing the soil; and

    e.    Measures to counteract the damage that the pollution will cause to the University's reputation and business.

28.     Notwithstanding the measures described in paragraph 27, the University will be required to restrict its use of the Rehabilitation Center property, which was the only property available for substantial University expansion, and also must forgo conducting agricultural activities on campus.

29.     Also notwithstanding the measures described in paragraph 27, the University has suffered and will continue to suffer damages including but not limited to loss of its property value and usable groundwater. In addition, the acts and omissions of Defendants in contaminating the University's property directly interfere with the University's business expectancy and have irreparably damaged its enterprise goodwill, both now and in the future, by,

6

among other things, damaging the University's reputation; causing an anticipated reduction in enrollment, customer base, and financial support of the University; and by causing alarm, stigma and uncertainty among students, patrons, staff and others as to whether the condition of the University's property poses a health risk.

30.     The University has spent money and its officials have spent time investigating and responding to the Institute Plant pollution. Investigating and responding to the Institute Plant pollution has also created a distraction, diminishing the University's ability to carry out its missions of educating students and serving the community and region, as well as causing frustration, annoyance, and inconvenience.

31.     All the damages described in the preceding paragraphs were directly and proximately caused by Defendants' acts and omissions.

32.     Defendant Dow knows the extent of the Institute Plant's pollution of the University's property, yet refuses to perform any removal or remediation of the pollution.

33.     Defendants caused the pollution of the University's property through no fault of the University and without the University's consent.

## CLAIMS FOR RELIEF[2]

### COUNT I: DECLARATORY JUDGMENT

34.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

---

[2] In addition to the claims for relief made herein, the University will transmit forthwith via United States Mail to the Defendants and the West Virginia Department of Environmental Protection pre-suit notice letters as required by statute and regulation which provide notice to Defendants that the University intends to seek leave of this Honorable Court after the requisite 60-day pre-suit notice has lapsed to amend this Complaint to include a regulatory cause of action asserted under the Citizen Suit provision of the West Virginia Hazardous Waste Management Act, W.Va. Code section 22-18-1 et seq.

35.     An actual and legal controversy exists such that the University is entitled to a judicial declaration of its rights and legal relationship with Defendants.

36.     WHEREFORE, the University respectfully requests that this Court enter a declaratory judgment in its favor and against Defendants, jointly and severally, pursuant to the West Virginia Uniform Declaratory Judgment Act, W.Va. Code §§ 55-13-1 and 55-13-8, as follows:

    a.     Declaring that Defendants are jointly and severally liable to the University, and must pay all necessary expenses and costs incurred in the removal, remediation and restoration of the University's property to its pre-existing condition; including but not limited to investigation and evaluation costs, testing and monitoring costs, costs associated with the University's participation in studies and meetings relating to monitoring and assessing the plumes of the dangerous chemicals stemming from Defendants' contamination; the cost of treatment options and all other response costs necessary to restore the University's property to the condition it would have been in absent Defendants' contamination, a condition meeting or exceeding residential use standards;

    b.     Declaring that Defendants must fully indemnify the University against all claims by third parties arising as a result of the Institute Plant Contaminants, to include bearing all legal fees, costs, and expenses associated with such claims;

    c.     Ordering that Defendants must cease and desist from operating their facility unless and until they can operate it in a responsible and prudent manner that prevents further contamination of the University's property;

8

d. Ordering Defendants, at their expense, to implement effective plans to remove and remediate the contamination and fully restore the University's property to the condition it would have been in absent the contamination;

e. Ordering Defendants to conduct periodic post-remediation studies and monitoring to assure the effectiveness of the remedial measures.

f. Maintaining jurisdiction over this matter to ensure that remediation and restoration efforts are performed according to such plans, and are timely and properly executed;

g. Ordering compensatory and remedial relief, as follows: An award of damages which will fully and fairly compensate the University for its losses, including but not limited to (1) any reasonable cost incurred to date for environmental investigation; (2) the cost of any future environmental investigation that the University can reasonably expect to incur; (3) all costs which are reasonably necessary to restore the University's property to the condition it would have been in absent the Defendant's contamination; (4) compensation for the loss of the enjoyment of the University's property, both past and future; (5) compensation for the diminution in value of the University's groundwater; (6) compensation for the loss of business interest, enterprise and enrollment, and all income generated therefrom, as well as damage to reputation and brand and loss of goodwill, both past and future, occasioned by Defendants' acts and omissions; (7) aggravation, annoyance, and inconvenience, past and future; (8) past and future loss of the value of the University's real property and rights incidental thereto; and (9) consequential damages.

h. Awarding punitive damages;

9

     i.      Awarding the costs and expenses of this action, including attorney's fees and expert fees;

     j.      Awarding pre-judgment and post-judgment interests;

     k.      Awarding the University such other damages as the Court deems appropriate.

### COUNT II: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

37.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

38.     The Defendants continue to operate their businesses and maintain the Institute Plant in a manner which releases the Institute Plant Contaminants into the environment and the University's property.

39.     Defendants' ongoing pollution of the University's property is causing the University irreparable harm, including but not limited to contamination of the University's property that cannot be fully removed and damage to the University's reputation, business, customer base, and goodwill that are permanent and that cannot be fully repaired.

40.     Remedies at law and monetary damages are inadequate to fully compensate the University for these injuries.

41.     Defendants will not be harmed by the issuance of an injunction.

42.     The University's likelihood of success on the merits in this action weighs in favor of issuing an injunction.

43.     Balancing the hardships between the University's injury and the hardship upon Defendant in immediately remediating the contamination and restoring the University's property, a remedy in equity is warranted.

10

44. The public interest would be well served by enjoining further contamination by Defendants and ordering them to immediately remediate and restore the University's property to the condition it would have been in absent the contamination.

45. Wherefore, the University prays that the Court issue preliminary and permanent injunctions ordering Defendants to:

      a. Remove the Institute Plant Contaminants from the University's property;

      b. Install barriers to protect University facilities, including but not limited to buildings and athletic fields, from possible intrusions of the Institute Plant Contaminants;

      c. Install protective systems in all University buildings sufficient to ensure that, in the event the Institute Plant Contaminants enter the indoor environment in any building, they are removed or rendered harmless;

      d. Monitor the Institute Plant Contaminants on the University's property to ensure that no person is exposed to the Institute Plant Contaminants;

      e. Implement a national public relations program funded at a level sufficient to completely counteract the damage that the Institute Plant Contaminants will do to the University's reputation, business, customer base, and goodwill;

      f. Take all other steps necessary to eliminate any effects of the Institute Plant Contaminants on the University; its students, faculty, and staff; and other persons present on the University's property; and to restore the University and its property to the condition it would have been in absent the Institute Plant Contaminants;

      g. Bear all costs and losses that the University incurs as a result of the Institute Plant's pollution of the University's property.

46.   The University further prays that the Court regularly monitor Defendants' compliance with its Order granting this relief.

## COUNT III: NEGLIGENCE

47.   The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

48.   Defendants owed the University a duty to conduct their business, operations, and/or storage of dangerous chemicals with reasonable care or special care so as not to jeopardize the University property and interests, both past and future.

49.   Defendants breached their duty of care by negligently handling dangerous chemicals, resulting in the release of the Institute Plant Contaminants into the ground and groundwater at the Institute Plant and the University.

50.   As a direct and proximate result of Defendants' negligence, these dangerous chemicals migrated onto and contaminated the University's property and the groundwater beneath it.

51.   Defendants further breached their duty of care by failing to properly respond to, rectify, and remove the contamination described herein; by failing to warn the University of their acts and omissions above; and by failing to clean up the Institute Plant Contaminants that migrated and will continue to migrate onto the property of the University in the future, resulting in contamination.

52.   But for Defendants' acts and omissions, the contamination described herein would not have occurred and the University would not have been harmed.

12

53.     Defendants knew and should have known that their conduct was in violation of environmental laws, and knew and should have known that it would proximately cause harm and damage to the University.

54.     As a direct and proximate result of Defendants' negligent acts and omissions, the University has suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief set forth below.

## COUNT IV: PUBLIC NUISANCE

55.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

56.     As a state agency, the University is engaged in business and services that benefit the general public, both in the form of higher education as well as various other enriching activities.

57.     The University conducts its business, services, and activities for the public upon public ground that it owns as an agency of the State of West Virginia.

58.     At all relevant times, Defendants had a duty to operate their business and maintain their site without violating the University's proprietary interest in conducting its business and activities upon its property, including the right to the use and enjoyment of its property, and specifically the attraction of students for enrollment and others to the University.

59.     Defendants failed to prevent and remedy the contamination of the environment, thus substantially and unreasonably interfering with the University's property and the public's rights to enjoy such property, as well as the services, enriching activities, and benefits of the University.

13 .

60. Defendants' conduct has further substantially and unreasonably interfered with the safety and health of the public who enter upon the University's property.

61. The pollution complained of herein violates statutes and regulations applicable to the public health.

62. The pollution complained of herein is of a continuing nature and has produced permanent or long-lasting effects, which Defendants know to have a significant effect on the public's rights, safety, and health as complained of herein.

63. The University as the property owner and service provider has suffered special harm because the contamination unreasonably interferes with and disturbs the University's business and business expectancy, unreasonably interferes with the University's comfortable use and enjoyment of property, and unlawfully interferes with and prevents the public's enjoyment of the business, services, and benefits of the University.

64. Further, the University as the property owner has suffered special harm because, among other things, it has incurred response costs to investigate and respond to the contamination impacting its property and business invitees on its property, including staff and students; and has suffered damages distinct from the public at large, as further described herein.

65. This nuisance and the resultant damages to the University were foreseeable to and proximately caused by Defendants.

66. Such substantial and unreasonable interference and adverse effect on the use, enjoyment, and value of the University's property and the rights, safety, and health of the public is ongoing and continuous, and is reasonably certain to cause future damage if the nuisance is not abated.

14

67. The University and members of the public who use its services have suffered and will continue to suffer the damages described in this Complaint and sought in the Prayer for Relief below.

## COUNT V: PRIVATE NUISANCE

68. The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

69. The University has ownership and proprietary interests in the real and personal property which was contaminated by dangerous chemicals migrating from Defendants' property.

70. As stated herein, these dangerous chemicals migrated onto the University's property as a direct and proximate result of Defendants' acts and omissions and breaches of duties of care.

71. Defendants knew that the invasion of said dangerous chemicals into and onto the University's property was substantially certain to result from their actions and omissions, as aforesaid.

72. The University has the right to exclusive use and quiet enjoyment of its property.

73. The conduct of Defendants constitutes a private nuisance in that such conduct has caused property damage as well as substantial injury and caused an unwarranted and unreasonable interference with the comfortable enjoyment and use by the University of its property and its right to use and develop its property in the customary manner without exposure to or concern regarding the dangers of dangerous chemicals.

74. This substantial and unreasonable interference was intentional, or in the alternative, was negligent or reckless. Defendants knew or should have known their conduct would have these effects upon the University and its property.

15

75.     In the alternative, Defendants' conduct created a substantial and unreasonable interference resulting in an abnormally dangerous condition.

76.     The gravity of harm to the University outweighs the social value of permitting Defendants to conduct their operations and business in a manner that causes such harm.

77.     This nuisance and the resultant damages to the University were foreseeable to and proximately caused by Defendants.

78.     Such substantial and unreasonable interference and adverse effect on the use, enjoyment, and value of the University's property is ongoing and continuous, and is reasonably certain to cause future damage.

79.     Unless the nuisance is abated, the University's reputation, business, customer base, goodwill, and financial support will suffer, and its property value and other interests will be further jeopardized.

80.     As a direct and proximate result, the University has suffered and will continue to suffer the damages described in this Complaint and is entitled to the remedies sought in the Prayer for Relief below.

## COUNT VI: TRESPASS

81.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

82.     At all relevant times, the University owned and/or lawfully possessed property within the area affected by the contamination.

83.     The Defendants' acts and omissions caused dangerous chemicals to physically enter onto the property of the University and to contaminate it, without consent or acquiescence of the University.

16

84.     The Defendants' conduct was intentional; or in the alternative was either negligent, wanton, or reckless.

85.     In the alternative, the damages complained of herein resulted from Defendants' conduction of an extrahazardous activity or use of a dangerous instrumentality.

86.     Defendants have a duty to remove these dangerous chemicals from the University's property, and have failed to do so.

87.     The migration and continued presence of dangerous chemicals from Defendants' site constitutes a trespass upon the University's property.

88.     This unlawful trespass by Defendants proximately caused substantial damage to the University in its exclusive possession of its property and unreasonably interfered with its conduct of business, services, and activities, and its enrollment and other interests, both past and future; and has caused the University a diminution in property value and other damages, as set forth more fully herein, all of which were foreseeable to Defendants.

89.     As a direct and proximate result of Defendants' trespass, the University will continue to suffer the damages described in this Complaint and is entitled to the remedies sought in the Prayer for Relief below.

## COUNT VII: STRICT LIABILITY

90.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

91.     Defendants' conduct in the production, storage, control, disposal, release, and/or use of dangerous chemicals in its operations at the Institute Facility constituted an abnormally dangerous activity, necessitating a heightened duty of care to prevent injury to others.

17

92.     The activities of the Defendants have resulted in the intentional, incidental, or accidental generation of dangerous chemicals on their property, and the migration of dangerous chemicals onto the University's property, which has (a) created a high degree of risk of harm to others, and particularly persons residing, visiting, working upon, or attending school and related activities upon the University's property; as well as to the property and chattels of the University; (b) created a risk involving a likelihood that the harm would be great; (c) created a risk of harm that could not be eliminated by the exercise of reasonable care; (d) were and are not activities or matters of common usage; and (e) were and are inappropriate to the place that they were and are being carried on, in that they constituted and constitute a non-natural use of the Defendants' property and the University's property, which imposed an unusual and extraordinary risk of harm to the University's property.

93.     The value of Defendants' activities to the community are outweighed by their dangerous attributes.

94.     As a direct and proximate result of the conduct of Defendants in engaging in the abnormally dangerous activities alleged above, dangerous chemicals have harmed and are contaminating the University's property, and those upon the University's property have been exposed to such dangerous chemicals. The harm sustained by the University is exactly the kind of harm which made Defendants' activities abnormally dangerous.

95.     The University did not contribute to its harm.

96.     Defendants are strictly liable to the University for all damages to the University, past and future, which are the natural consequence of Defendants' abnormally dangerous activities.

18

97.     As a direct and proximate result of Defendants' acts and omissions, the University has suffered and will continue to suffer damages, and is entitled to the relief described in this Complaint and sought in the Prayer for Relief below.

## COUNT VIII: UNJUST ENRICHMENT

98.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

99.     Defendants have been greatly enriched by their acts and omissions, including, but not limited to, their failure to properly control the dangerous chemicals released from their property, sites, and/or operations; and by their failure to remove and dispose of the dangerous chemicals which contaminate the property of the University.

100.    Defendants are using the University's property as their own private dumping or disposal facility without compensation or lawful right to do so.

101.    Defendants are aware that the contamination occurred, and yet have benefited and continue to benefit from their wrongful conduct by failing to reasonably abate, remove, and remedy this contamination and by failing to cover the costs of such correction and cure.

102.    Defendants lack any legal justification for allowing the dangerous and toxic chemicals to remain on the property of the University.

103.    The University did not consent to the use of its property in this manner.

104.    Defendants' unauthorized use of the University's property has benefited them monetarily to the University's detriment. Defendants are therefore unjustly enriched, and the University is entitled, in equity, to past and future damages as a result of Defendants' unjust enrichment.

105.    Under the circumstances described herein, it would be inequitable for Defendants to retain the benefits of their acts and omissions without paying the value thereof to the University, for past and future damages.

106.    As a direct and proximate result of Defendants' acts and omissions, the University has suffered and will continue to suffer future damages in the form of loss of business and business expectancy; damage to reputation and loss of goodwill; diminution in property value; cost of cleanup; cost of remediation; and aggravation, annoyance and inconvenience. The University thus seeks the damages named in the Prayer for Relief at the conclusion of this Complaint.

### COUNT IX: PUNITIVE DAMAGES

107.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

108.    The Defendants' acts and omissions as described in Counts I through VIII above were conducted with intentional, malicious, wanton, willful, and reckless indifference to the health and safety of the University's students, faculty, and staff, as well as others on campus, and to the University's rights; and with flagrant disregard for the safety and property of the University. Accordingly, Defendants are liable for punitive damages.

### PRAYER FOR RELIEF

109.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

110.    WHEREFORE, the University demands that it be awarded damages together with equitable relief as follows:

20

a. A judgment against Defendants finding that they are jointly and severally liable to the University;

b. Compensatory and remedial damages that will fully and fairly compensate the University for its past and future losses, including but not limited to:

      i. any reasonable cost incurred to date for environmental investigation;

      ii. the cost of any future environmental investigation and health assessment that the University can reasonably expect to incur;

      iii. all costs that are reasonably necessary to restore the University's property to the condition it would have been in absent the Defendant's contamination;

      iv. compensation for the loss of the enjoyment of the University's property, both past and future;

      v. compensation for the diminution in value of the University's groundwater;

      vi. compensation for the loss of business interest, enterprise, and enrollment, and all income generated therefrom, as well as damage to reputation and brand and loss of goodwill, both past and future, occasioned by Defendants' acts and omissions;

      vii. aggravation, annoyance, and inconvenience, past and future;

      viii. past and future loss and diminution of the value of the University's real property and rights incidental thereto; and

      ix. consequential damages;

    c.    Punitive damages in an amount determined by a jury;

    d.    The costs and expenses of this action, including attorney's fees and expert fees;

    e.    Prejudgment and postjudgment interests;

    f.    The cost of any expenses, fees, or liability incurred by the University as a result of claims by third parties that arise from the Institute Plant Contaminants;

    g.    All other further and general relief, whether compensatory, punitive, or equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

                **WEST VIRGINIA STATE**
                **UNIVERSITY BOARD OF GOVERNORS**
                **for and on behalf of West Virginia State**
                **University,**

                **By Counsel.**

Brian A. Glasser (WVSB #6597)
Samuel A. Hrko (WVSB #7727)
Steven R. Ruby (WVSB #10752)
Sharon F. Iskra (WVSB #6582)
Bailey & Glasser LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*



**Notice of Service of Process**

TRL / ALL
Transmittal Number: 16748179
Date Processed: 06/12/2017

| | |
|---|---|
| Primary Contact: | Malini Moorthy<br>Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205-9741 |
| Electronic copy provided to: | Ana Hartner<br>Heather Rossi<br>Jennifer Makuch<br>Kayla Dingman |

| | |
|---|---|
| Entity: | Bayer Corporation<br>Entity ID Number 2486849 |
| Entity Served: | Bayer Corporation |
| Title of Action: | West Virginia State University Boarll of Governors for and on behalf of West Virginia State University vs. The Dow Chemical Company |
| Document(s) Type: | Summons and Amended Complaint |
| Nature of Action: | Product Liability |
| Court/Agency: | Kanawha County Circuit Court, West Virginia |
| Case/Reference No: | 17-C-599 |
| Jurisdiction Served: | West Virginia |
| Date Served on CSC: | 06/12/2017 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | WV Secretary of state on 06/08/2017 |
| How Served: | Certified Mail |
| Sender Information: | Sharon F. Iskra<br>304-345-6555 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2017 JUN 12  AM 11: 22

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

**Control Number:** 196533

**Defendant:** BAYER CORPORATION
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company

**County:** Kanawha

**Civil Action:** 17-C-599

**Certified Number:** 92148901125134100002095649

**Service Date:** 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State

3-4

# SUMMONS    FILED

2017 JUN 12 PM 1:03

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

      Plaintiff,

v.                                                          Civil Action No.: 17-C-599

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

      Defendants.

TO THE ABOVE NAMED DEFENDANT:          BAYER CORPORATION
                                       c/o Corporation Service Company
                                       209 West Washington Street
                                       Charleston, WV 25302

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301**, an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                                 CLERK OF COURT:

_6/6/17_                               Cathy S. Gatson, Clerk

                                       By KR

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2017 JUN 12 AM 11:2

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

**Control Number:** 196536

**Defendant:** RHONE-POULENC AG COMPANY
CN5266 ATTN: TAX DEPARTMENT
PRINCETON, NJ 08543-5266 US

**Agent:** C/O ROBERT KENNY

**County:** Kanawha

**Civil Action:** 17-C-599

**Certified Number:** 92148901125134100002095663

**Service Date:** 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any
questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the
Secretary of State's office.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State

5-6

# SUMMONS FILED

2017 JUN 12 PM 1:03
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,**

      Plaintiff,

v.                              **Civil Action No.: 17-C-599**

**THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,**

      Defendants.

**TO THE ABOVE NAMED DEFENDANT:**      **RHONE-POULENC AG COMPANY
c/o Robert Kenny
CN5266 Attn: Tax Department
Princeton, NJ 08543-5266**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                    CLERK OF COURT:

_____6/6/17_____           **Cathy S. Gatson, Clerk**

                                  By KR

 CT Corporation

**Service of Process Transmittal**
06/12/2017
CT Log Number 531388175

TO: Rebecca Crowder
The Dow Chemical Company
2030 Dow Ctr Ofc 851
Midland, MI 48674-1500

RE: **Process Served in West Virginia**

FOR: Union Carbide Corporation (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | West Virginia State University Board of Governors for and on behalf of West Virginia State University, Pltf. vs. The Dow Chemical Company, et al., Dfts. // To: Union Carbide Corporation |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint |
| **COURT/AGENCY:** | Kanawha County Circuit Court, WV Case # 17C599 |
| **NATURE OF ACTION:** | Environmental Litigation - Government Enforcement Action |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/12/2017 postmarked on 06/09/2017 |
| **JURISDICTION SERVED :** | West Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the date of service |
| **ATTORNEY(S) / SENDER(S):** | Sharon F. Iskra Bailey & Glasser LLP 209 Capitol Street Charleston, WV 25301 304-345-6555 |
| **REMARKS:** | (SOS) Service of Process made on West Virginia Secretary of State and sent to CT Corporation on 06/08/2017. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/13/2017, Expected Purge Date: 06/18/2017 Image SOP Email Notification, iNote Recipient fmdnmsp@dow.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 5400 D Big Tyler Road Charleston, WV 25313 |
| **TELEPHONE:** | 919-821-7139 |

Page 1 of 1 / DS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**USPS CERTIFIED MAIL™**



9214 8901 1251 3410 0002 0956 32

UNION CARIBIDE CORPORATION
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313



**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

**Control Number:** 196532

**Defendant:** UNION CARIBIDE CORPORATION
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

**Agent:** C. T. Corporation System

**County:** Kanawha

**Civil Action:** 17-C-599

**Certified Number:** 92148901125134100002095632

**Service Date:** 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State



CERTIFIED MAIL℠




U.S. POSTAGE >> PITNEY BOWES

ZIP 25311
02 4W $ 006.20⁰
0000336774 JUN 09. 2017

BUSINESS & LICENSING
1610 - 00

# SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

       Plaintiff,

v.

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

       Defendants.

Civil Action No.: 17-C-599

SECRETARY OF STATE
STATE OF WEST VIRGINIA

2017 JUN -8 P 12: 48

ACCEPTED FOR
SERVICE OF PROCESS

TO THE ABOVE NAMED DEFENDANT:

UNION CARBIDE CORPORATION
c/o C.T. Corporation System
5400 D Big Tyler Road
Charleston, WV 25313

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:

6/6/17

CLERK OF COURT:

**Cathy S. Gatson, Clerk**

By KR


## CT Corporation

**Service of Process Transmittal**
06/12/2017
CT Log Number 531387854

TO:     Rebecca Crowder
        The Dow Chemical Company
        2030 Dow Ctr Ofc 851
        Midland, MI 48674-1500

RE:     **Process Served in West Virginia**

FOR:    The Dow Chemical Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | WEST VIRGINIA STATE UNIVERSITY BOARD OF GOVERNORS for and on behalf of West Virginia State University, Pltf. vs. THE DOW CHEMICAL COMPANY, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, First Amended Complaint |
| **COURT/AGENCY:** | Kanawha County Circuit Court, WV<br>Case # 17C599 |
| **NATURE OF ACTION:** | Environmental Litigation – Government Enforcement Action |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/12/2017 postmarked on 06/09/2017 |
| **JURISDICTION SERVED :** | West Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Steven R. Ruby<br>Bailey & Glasser LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>304-345-6555 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/12/2017, Expected Purge Date: 06/17/2017<br><br>Image SOP<br><br>Email Notification,  iNote Recipient  fmdnmsp@dow.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 5400 D Big Tyler Road<br>Charleston, WV 25313 |
| **TELEPHONE:** | 919-821-7139 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CERTIFIED MAIL™




U.S. POSTAGE >> PITNEY BOWES

ZIP 25311   $ 006.62⁰
02 4W
0000336774 JUN. 09. 2017.

BUSINESS & LICENSING

1610 - 00₁

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**USPS CERTIFIED MAIL™**



9214 8901 1251 3410 0002 0956 25

THE DOW CHEMICAL COMPANY
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313



**Mac Warner**
Secretary of State
State of West Virginia
**Phone: 304-558-6000**
**886-767-8683**
**Visit us online:**
www.wvsos.com

| | |
|---|---|
| **Control Number:** 196531 | **Agent:** C. T. Corporation System |
| **Defendant:** THE DOW CHEMICAL COMPANY | **County:** Kanawha |
| 5400 D Big Tyler Road | **Civil Action:** 17-C-599 |
| CHARLESTON, WV 25313 US | **Certified Number:** 92148901125134100002095625 |
| | **Service Date:** 6/8/2017 |

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

# SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

      Plaintiff,

v.

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

      Defendants.

Civil Action No.: 17-C-599

**TO THE ABOVE NAMED DEFENDANT:**

THE DOW CHEMICAL COMPANY
c/o C.T. Corporation System
5400 D Big Tyler Road
Charleston, WV 25313

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:

_____6/6/17_____

CLERK OF COURT:

Cathy S. Gatson, Clerk

By DR

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2017 JUN 12 AM 11: 22

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

Control Number: 196528

Defendant: RHONE-POULENC AG COMPANY
INC.
2 T W ALEXANDER DR.
RESEARCH TRIANGLE PARK, NC
27709 US

County: Kanawha

Civil Action: 17-C-599

Certified Number: 92148901125134100002095618

Service Date: 6/8/2017

I am enclosing:

1 summons, 1 other: (FIRST AMENDED COMPLAINT)

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of YOUR ADMINISTRATIVELY DISSOLVED CORPORATION

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of YOUR ADMINISTRATIVELY DISSOLVED CORPORATION as your attorney-in-fact.
Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed
paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

# SUMMONS

FILED
2017 JUN 12 PM 1:03
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

        Plaintiff,

v.

                                    Civil Action No.: 17-C-599

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

        Defendants.

TO THE ABOVE NAMED DEFENDANT:      RHONE-POULENC AG COMPANY, INC.
                                        c/o Robert Kenny
                                        CN5266 Attn: Tax Department
                                        Princeton, NJ 08543-5266

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                              CLERK OF COURT:

       6/6/17                              Cathy S. Gatson, Clerk

                                                 By KR

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2017 JUN 12 AM 11:21

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

Control Number: 196513

Defendant: AVENTIS CROPSCIENCE USA LP
NOW: BAYER CROPSCIENCE LP
209 West Washington Street
Charleston, WV 25302 US

Agent: Corporation Service Company

County: Kanawha

Civil Action: 17-C-599

Certified Number: 92148901125134100002095588

Service Date: 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

13-14

# SUMMONS FILED

2017 JUN 12 PM 1:03
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

       Plaintiff,

v.

                               Civil Action No.: 17-C-599

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

       Defendants.

**TO THE ABOVE NAMED DEFENDANT:**
                      **AVENTIS CROPSCIENCE USA LP**
                      **c/o Corporation Service Company**
                      **209 West Washington Street**
                      **Charleston, WV 25302**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                             CLERK OF COURT:

       6/6/17

                               Cathy S. Gatson, Clerk
                                     By KR

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**FILED**

2017 JUN 12  AM 11: 30

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

Control Number: 196518

Defendant: RHONE-POULENC INC. NOW:
RHONE-POULENC AG COMPANY
INC.
2 T W ALEXANDER DRIVE
RESEARCH TRIANGLE PARK, NC
27709 US

County: Kanawha

Civil Action: 17-C-599

Certified Number: 92148901125134100002095601

Service Date: 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of YOUR ADMINISTRATIVELY DISSOLUTION CORPORATION

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of YOUR ADMINISTRATIVELY DISSOLUTION CORPORATIONas your attorney-in-fact.
Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed
paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

15-16

# SUMMONS FILED

2017 JUN 12 PM 1:04
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,**

      Plaintiff,

v.                                                          Civil Action No.: 17-C-599

**THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,**

      Defendants.

**TO THE ABOVE NAMED DEFENDANT:**
                            RHONE-POULENC INC.
                            c/o C.T. Corporation System
                            5400 D Big Tyler Road
                            Charleston, WV 25313

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                                                   CLERK OF COURT:

    6/6/17                                            Cathy S. Gatson, Clerk

                                          By KR

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**FILED**

2017 JUN 12 AM 11: 30

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

Cathy Gatson
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

**Control Number:** 196517

**Defendant:** BAYER CROPSCIENCE HOLDING
INC
100 BAYER ROAD, BUILDING 4
PITTSBURGH, PA 15205 US

**County:** Kanawha

**Civil Action:** 17-C-599

**Certified Number:** 92148901125134100002095595

**Service Date:** 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any
questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the
Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

*17-18*

CERTIFIED MAIL




U.S.POSTAGE

ZIP 25311 $
02 4W
0000336774 J

RECEIVED JUN 1 3 REC'D

BUSINESS & ...

# SUMMONS FILED

2017 JUN 12 PM 1:04

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,

        Plaintiff,

v.

THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,

        Defendants.

Civil Action No.: 17-C-599

ACCEPTED FOR SERVICE OF ... 2017 JUN - 8 P 12:45

TO THE ABOVE NAMED DEFENDANT:

BAYER CROPSCIENCE HOLDING INC.
c/o Corporation Service Company
209 West Washington Street
Charleston, WV 25302

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:

    6/6/17

CLERK OF COURT:

    Cathy S. Gatson, Clerk

        By CK



## Notice of Service of Process

**RXT / ALL**
**Transmittal Number: 16748491**
**Date Processed: 06/12/2017**

| | |
|---|---|
| Primary Contact: | Sheri Roberson<br>Bayer CropScience LP<br>2 TW Alexander Drive<br>Raleigh, NC 27709 |
| Electronic copy provided to: | Ms. Miriam Carver<br>Heather Rossi<br>Shayne Ross-Smith<br>Jane Snyder<br>Kayla Dingman |

| | |
|---|---|
| Entity: | Bayer CropScience LP<br>Entity ID Number  2034542 |
| Entity Served: | Bayer Cropscience LP |
| Title of Action: | West Virginia State University Board of Governors for and on behalf of West Virginia State University vs. The Dow Chemical Company |
| Document(s) Type: | Summons and Amended Complaint |
| Nature of Action: | Environmental |
| Court/Agency: | Kanawha County Circuit Court, West Virginia |
| Case/Reference No: | 17-C-599 |
| Jurisdiction Served: | West Virginia |
| Date Served on CSC: | 06/12/2017 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | CSC |
| How Served: | Certified Mail |
| Sender Information: | Sharon F. Iskra<br>304-345-6555 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 0956 56

BAYER CROPSCIENCE LP
Corporation Service Company
209 West Washington Street
Charleston, WV 25302



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

**Control Number:** 196535

**Defendant:** BAYER CROPSCIENCE LP
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company

**County:** Kanawha

**Civil Action:** 17-C-599

**Certified Number:** 92148901125134100002095656

**Service Date:** 6/8/2017

I am enclosing:

**1 summons, 1 other: (FIRST AMENDED COMPLAINT)**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

# SUMMONS

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**WEST VIRGINIA STATE
UNIVERSITY BOARD OF GOVERNORS
for and on behalf of West Virginia State
University,**

      **Plaintiff,**

v.

                                    Civil Action No.: 17-C-599

**THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
BAYER CORPORATION;
BAYER CROPSCIENCE LP;
BAYER CROPSCIENCE HOLDING INC.;
RHONE-POULENC INC.;
RHONE-POULENC AG COMPANY;
RHONE-POULENC AG COMPANY, INC.; and
AVENTIS CROPSCIENCE USA LP,**

      **Defendants.**

**TO THE ABOVE NAMED DEFENDANT:**         **BAYER CROPSCIENCE LP
c/o Corporation Service Company
209 West Washington Street
Charleston, WV 25302**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's counsel, **Brian A. Glasser, Samuel A. Hrko, Steven R. Ruby and Sharon F. Iskra, Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301,** an Answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within twenty (20) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will thereafter be barred from asserting in another action any claim you may have which may be asserted in the above-styled action.

DATED:                          CLERK OF COURT:

_____6/6/17_____          _____**Cathy S. Gatson, Clerk**_____
                                          By KR